1  Robert B. Jobe (Cal. State Bar #133089)
   Katherine M. Lewis (Cal. State Bar #247258)
2  LAW OFFICE OF ROBERT B. JOBE
   550 Kearny Street, Ste. 200
3  San Francisco, CA 94108
   Tel:    (415) 956-5513
4  Fax:    (415) 840-0308
   Email: bob@jobelaw.com
5
   Attorneys for Plaintiff.
6

7              UNITED STATES DISTRICT COURT FOR THE

8               NORTHERN DISTRICT OF CALIFORNIA

9

10  MOHAMMAD NAEEM KHAN,              )    No.
                                      )
11        Plaintiff,                  )
                                      )    CV 08        2015
12        v.                          )
                                      )
13  EMILIO T. GONZALEZ, DIRECTOR,     )
    USCIS; U.S. CITIZENSHIP AND       )
    IMMIGRATION SERVICES; GERARD      )    COMPLAINT FOR RELIEF UNDER
14  HEINAUER, DIRECTOR, USCIS         )    THE ADMINISTRATIVE PROCEDURE
    NEBRASKA SERVICE CENTER;          )    ACT
15  MICHAEL CHERTOFF, SECRETARY,      )
    DEPARTMENT OF HOMELAND            )
16  SECURITY; DEPARTMENT OF           )    DHS Alien Number: 79-287-100
    HOMELAND SECURITY;                )
17  MICHAEL B. MUKASEY, U.S.          )
    ATTORNEY GENERAL,                 )
18                                    )
          Defendants.                 )
19  ─────────────────────────────────

20

21  **COMPLAINT FOR RELIEF UNDER THE ADMINISTRATIVE PROCEDURE ACT**

22        By and through his undersigned attorneys, Plaintiff, MOHAMMAD NAEEM KHAN

23  ("Mr. Khan"), as and for his complaint, alleges as follows:

24                         **INTRODUCTION**

25        1.      Mr. Khan was born on April 9, 1974 in Pakistan and is a native and citizen of

26  Pakistan, who was granted asylum in the United States on July 19, 2001 by the San Francisco

27  Asylum Office ("Asylum Office").  Mr. Singh's involvement in the Mohajir Quomi Movement

28  Complaint for Relief Under the APA

("MQM"), the third largest political party in Pakistan, was the basis of his asylum claim.  When the Asylum Office granted Mr. Khan's application, it necessarily found that Mr. Khan was not inadmissible or subject to any of the various preclusions to a grant of asylum set forth in 8 U.S.C. § 1158(b)(2)(A)(2001).  Thus, the asylum officer necessarily concluded that Mr. Khan is not "described in subclause (I), (II), (III), or (IV) of section 212(a)(3)(B)(i) [8 U.S.C. § 1182(a)(3)(B)(i)] or removable under section 237(a)(4)(B) [8 U.S.C. § 1227(a)(4)(B)] (relating to terrorist activity). . ."  8 U.S.C. § 1158(b)(2)(A)(v)(2001).

2.      After one year of physical presence in the United States as an asylee, a person granted asylum may adjust his status "to that of an alien lawfully admitted for permanent residence."  8 C.F.R. § 1209.2(a).  *See also* Immigration and Nationality Act ("INA" or "Act") § 209, 8 U.S.C. § 1159.  Thus, on or about June 2, 2003, Mr. Khan filed an application to adjust his status to that of a lawful permanent resident (Form I-485) with the U.S. Citizenship and Immigration Services ("USCIS," formerly the Immigration and Naturalization Service).[1]

3.      In a letter dated February 27, 2008, USCIS denied Mr. Singh's Form I-485, on the grounds that his support for and membership in the MQM make him inadmissible pursuant to INA § 212(a)(3)(B)(i)(I) [8 U.S.C. § 1182(a)(3)(B)(i)(I)] and INA § 212(a)(3)(B)(i)(VI) [8 U.S.C. § 1182(a)(3)(B)(i)(VI)].  Exh. 1 (*Decision on Application for Status as Permanent Resident*) at 4.  USCIS noted that "a review of the record reveals that you collected funds for the [MQM]," "encouraged others to join the MQM," and "assisted in the communication of that organization by passing along information to other members about protests and other events," and "distributed political literature."  *Id.* at 3.  USCIS further noted that Mr. Khan is a member of MQM and that he "joined that organization in Pakistan in 1993," "participated in meetings and protests," and "supported the MQM party's candidates in elections."  *Id.*  In concluding that

---

[1] Pursuant to the *Department of Homeland Security Reorganization Plan*, *Homeland Security Act of 2002*, Pub. L. No. 107-296, 116 Stat. 2135 (2002), 6 U.S.C. §§ 101-557, as of March 1, 2003, the INS was abolished and its functions were transferred to the U.S. Citizenship and Immigration Services ("USCIS") within the Department of Homeland Security ("DHS").

1  MQM is an undesignated terrorist organization pursuant to 8 U.S.C. § 1182(a)(3)(B)(vi)(III)[2]

2  and finding Mr. Khan inadmissible because of his involvement in that organization, the

3  Department of Homeland Security ("DHS") referred to a statement on the Memorial Institute for

4  the Prevention of Terrorism website, which stated: "In 2001, the MQM detonated a series of

5  explosive devices in Karachi to protest a water shortage in the city." *Id.* DHS also referenced

6  the Institute for Conflict Management website that says MQM "is now split into two factions,"

7  Muttahida Quomi Mahaz (MQM(A)) and Mohjir Quomi Movement (MQM(H)) and that "the

8  two factions have been responsible for several incidents of urban terrorism even as the

9  MQM(A) participates in Pakistan's electoral process." *Id.* Based solely on these two brief

10  quotations, DHS summarily concluded that:

11  . . .the actions and activities of MQM, MQM-H and MQM-A meet the current definition
     of an undesignated terrorist organization at INA section 212(a)(3)(B)(vi)(III) [8 U.S.C. §
     1182(a)(3)(B)(vi)(III)]. MQM, MQH-H[3] and MQM-A engage in armed conflict with

12   opponents including the government and police, detonation of explosive devices and
     random attacks against civilians. The violent activities of the MQM, MQH-H[4] and

13   MQM-A were not engaged in purely for monetary gain and match those described in
     section 212(a)(3)(B)(vi)(III) [8 U.S.C. § 1182(a)(3)(B)(vi)(III)] and 212(a)(3)(B)(iv) [8

14   U.S.C. § 1182(a)(3)(B)(iv)].

15   Your activities on behalf of MQM as described above make you inadmissible under
     Section 212(a)(3)(B)(i)(I) [8 U.S.C. § 1182(a)(3)(B)(i)(I)] for engaging in terrorist

16   activities.

17   Furthermore, you are inadmissible under Section 212(a)(3)(B)(i)(VI) [8 U.S.C. §
     1182(a)(3)(B)(i)(VI)] as a member of an undesignated terrorist organization.

18   Accordingly, your application must be and hereby is denied.     The regulations do

19

20   [2] Prior to the passage of the Real ID Act of 2005, and when Mr. Khan was granted asylum and
     when Mr. Khan applied for adjustment of status, an undesignated "terrorist group" was defined as,

21   "a group of two or more individuals, whether organized or not, which engages in the activities
     described in subclause (I), (II), or (III) of clause (iv)." 8 U.S.C. § 1182(a)(3)(B)(vi)(III) (2004). On

22   May 11, 2005, the REAL ID Act of 2005, Pub. L. No. 109-12, 119 Stat. 231, went into effect, and
     amended the definition of an undesignated "terrorist organization" to include "a group of two or

23   more individuals, whether organized or not, which engages in, **or has a subgroup which engages**

24   **in**, the activities described in subclauses (I) through (VI) of clause (iv)." 8 U.S.C. §
     1182(a)(3)(B)(vi)(III) (emphasis added).

25

26   [3] This appears to be a typographical error and it should read MQM-H.

27   [4] This appears to be a typographical error and it should read MQM-H.

28   Complaint for Relief Under the APA                    3

1   not provide for an appeal to this decision.

2   *Id.* at 4.

3       4.      Because DHS's decision denying Mr. Khan's application for adjustment of status

4   was arbitrary, capricious, wholly unsupported by substantial evidence, and otherwise not in

5   accordance with law, it must be set aside pursuant to Administrative Procedure Act § 701, *et*

6   *seq.*

7                                           **JURISDICTION**

8       5.      Jurisdiction over the subject matter of this civil action is conferred on this Court

9   by 28 U.S.C. § 1331, as a civil action arising under the Constitution,[5] laws, or treaties of the

10  United States; 28 U.S.C. §§ 2201 and 2202, as a civil action seeking, in addition to other

11  remedies, a declaratory judgment; and 5 U.S.C. § 702, as a challenge to agency action under the

12  Administrative Procedure Act ("APA").

13                                            **VENUE**

14      6.      Venue is properly in this district pursuant to 28 U.S.C. §§ 1391(e)(2) and (e)(3),

15  because a substantial part of the events giving rise to this claim occurred in this district, Mr.

16  Khan resides in this district, and no real property is involved in this action.

17                                          **STANDING**

18      7.      The APA affords a right of review to a person who is "adversely affected or

19  aggrieved by agency action." 5 U.S.C. § 702. Defendants' action resulted in the denial of

20  Plaintiff's application, with no right of appeal. Plaintiff thus falls within the APA's standing

21  provisions. *See Legal Assistance for Vietnamese Asylum Seekers v. Dep't of State, Bureau of*

22  *Consular Affairs,* 45 F.3d 469, 471-72 (D.C. Cir. 1995), *reh'g denied,* 74 F.3d 1308 (D.C. Cir.),

23  *vacated on other grounds,* 117 S. Ct. 378 (1996); *see also, Abourezk v. Reagan,* 785 F.2d 1043,

24  1050-51 (D.C. Cir. 1986).

25  //

---

[5] The Due Process Clause and Article III of the Constitution also require that some judicial forum
remain available for Mr. Khan to challenge the denial of his application for adjustment of status.

Complaint for Relief Under the APA                    4

1

**PLAINTIFF**

2        8.    Mohammad Naeem Khan is a native and citizen of Pakistan who currently

3    resides at 2748 Gill Drive, Concord, California.  Mr. Khan was granted asylum on July 19, 2001

4    by the San Francisco Asylum Office.  Mr. Khan applied to adjust his status to that of a lawful

5    permanent resident pursuant to 8 U.S.C. § 1159(b) on June 2, 2003.  More than four years later,

6    on February 27, 2008, however, DHS denied Mr. Khan's application for adjustment of status.

7

**DEFENDANTS**

8        9.    Emilio T. Gonzalez is the Director of the USCIS and, as such, has been delegated

9    the authority to direct the administration of the USCIS, and to enforce the INA and all other

10   laws relating to the immigration and naturalization of non-citizens.  Defendant Gonzalez is sued

11   herein in his official capacity.

12       10.    USCIS is the federal agency within DHS that is responsible for the administration

13   and enforcement of the INA and all other laws relating to the immigration and naturalization of

14   non-citizens.

15       11.    Gerard Heinauer is the Director of the USCIS Nebraska Service Center, the

16   office within USCIS that issued the denial of Mr. Khan's application for adjustment of status,

     and is sued in his official capacity.

17

18       12.    Michael Chertoff is the Secretary of DHS, the executive department which

19   contains the USCIS, and is sued herein in his official capacity.  Defendant Chertoff is charged

20   with the administration and enforcement of the INA pursuant to INA § 103(a), 8 U.S.C. §

     1103(a).

21

22       13.    DHS is the federal agency encompassing the USCIS, which is responsible for the

23   administration and enforcement of the INA and all other laws relating to the immigration and

     naturalization of non-citizens.

24

25       14.    Michael B. Mukasey is sued in his official capacity as the U.S. Attorney General.

26   In that capacity, he is charged with supervising and directing the administration and operation of

     the Department of Justice, including the FBI.

27

28   Complaint for Relief Under the APA            5

1

**FIRST CAUSE OF ACTION**
**(Denial of Mr. Khan's Application for Adjustment of Status)**
(Violation of the Federal Regulations)

2

3        15.    Plaintiff repeats, alleges, and incorporates paragraphs 1 through 14 above as

4    though fully set forth herein.

5        16.    In denying Mr. Khan's application to adjust his status to that of a lawful

6    permanent resident pursuant to 8 U.S.C. § 1159(b) and providing no means to respond to its

7    characterization of the MQM as an "undesignated terrorist organization" under 8 U.S.C. §

8    1182(a)(3)(vi)(III), DHS violated 8 C.F.R. § 103.2 (b)(16).

9        17.    Pursuant to 8 C.F.R. § 103.2 (b)(16), "an applicant or petitioner shall be permitted

10   to inspect the record of proceeding which constitutes the basis for the decision, except as

11   provided in the following paragraphs." The regulations then explain:

12            If the decision will be adverse to the applicant or petitioner and is based on derogatory
             information considered by the Service and of which the applicant or petitioner is
13            unaware, he/she shall be advised of this fact and offered an opportunity to rebut the
             information and present information in his/her own behalf before the decision is
14            rendered,  except as provided in paragraphs (b)(16)(ii),[6] (iii),[7] and (iv)[8] of this section.

15   _____

16   [6] 8 C.F.R. § 103.2 (b)(16)(ii) states that "[a] determination of statutory eligibility shall be based
     only on information contained in the record of proceeding which is disclosed to the applicant
17   or petitioner, except as provided in paragraph (b)(16)(iv) of this section."

18   [7] 8 C.F.R. § 103.2 (b)(16)(iii) states that "[w]here an application may be granted or denied in the
     exercise of discretion, the decision to exercise discretion favorably or unfavorably may be based in
19   whole or in part on classified information not contained in the record and not made available to the
     applicant, provided the regional commissioner has determined that such information is relevant and
20   is classified under Executive Order No. 12356 (47 FR 14874; April 6, 1982) as requiring protection
21   from unauthorized disclosure in the interest of national security."

22   [8] 8 C.F.R. § 103.2 (b)(16)(iv) states:

23            An applicant or petitioner shall not be provided any information contained in the record
24            or outside the record which is classified under Executive Order No. 12356 (47 FR 14874;
             April 6, 1982) as requiring protection from unauthorized disclosure in the interest of
25            national security, unless the classifying authority has agreed in writing to such disclosure.
             Whenever he/she believes he/she can do so consistently with safeguarding both the
26            information and its source, the regional commissioner should direct that the applicant or
27            petitioner be given notice of the general nature of the information and an opportunity to

28   Complaint for Relief Under the APA                   6

1    Any explanation, rebuttal, or information presented by or in behalf of the applicant or
     petitioner shall be included in the record of proceeding.
2
     8 C.F.R. § 103.2 (b)(16)(i).
3
4        18.    In this case, DHS has never provided Mr. Khan with an opportunity to "inspect

5    the record of proceeding which constitute[d] the basis for the decision." 8 C.F.R. § 103.2

6    (b)(16).   Moreover, DHS did not provide Mr. Khan with an opportunity "to rebut the

7    information" that MQM was an "undesignated terrorist organization," nor did DHS provide Mr.

8    Khan with an opportunity to "present information in his/her own behalf before the decision

9    [was] rendered." 8 C.F.R. § 103.2 (b)(16)(i).   Rather, DHS issued a letter denying his

10   application to adjust to permanent resident status, and indicated that there was no appeal of this

11   decision. Exh. 1 (*Decision on Application for Status as Permanent Resident*) at 4.

         19.    Thus, Defendants' denial of Mr. Khan's application for adjustment of status is in
12
     clear violation of 8 C.F.R. § 103.2 (b)(16).   Mr. Khan must be provided with an opportunity to
13
     inspect the record of proceeding and present rebuttal information to USCIS before it renders a
14
     final decision on his adjustment status of application.   Defendants are, quite simply, failing to
15
     comply with their regulatory duties.
16
                        **SECOND CAUSE OF ACTION**
           **(Denial of Mr. Khan's Application for Adjustment of Status)**
17                    (Violation of the Administrative Procedure Act)

18       20.    Plaintiff repeats, alleges, and incorporates paragraphs 1 through 19 above as

19   though fully set forth herein.

20       21.    In denying Mr. Khan's application to adjust his status to that of a lawful

21   permanent resident pursuant to 8 U.S.C. § 1159(b), DHS committed several errors of law.

22   **DHS Acted Arbitrarily and Contrary to Law By Failing to Consider the Fact That the
     Asylum Office Granted Mr. Khan Asylum, Necessarily Concluding That Mr. Khan Was
23          Not Inadmissible Pursuant to 8 U.S.C. § 1182(a)(3)(B)(i).**

24       22.    Mr. Khan applied for asylum, based in part on his involvement in MQM.   The

25   _____

26       offer opposing evidence.   The regional commissioner's authorization to use such
         classified information shall be made a part of the record. A decision based in whole or in
27       part on such classified information shall state that the information is material to the
         decision.
28   Complaint for Relief Under the APA                    7

1    San Francisco Asylum Office was fully aware of Mr. Khan's involvement in MQM, and granted

2    Mr. Khan asylum, necessarily concluding that Mr. Khan was not inadmissible for having

3    "engaged in a terrorist activity." *See* 8 U.S.C. § 1158(b)(2)(A) (2001); 8 U.S.C. §

4    1182(a)(3)(B)(i) (2001).

5        23.    In finding Mr. Khan "ineligible" for adjustment of status, however, DHS opined

6    that Mr. Khan is "inadmissible" pursuant to 8 U.S.C. § 1182(a)(3)(B)(i)(I), as an alien who has

7    "engaged in terrorist activity," and is inadmissible pursuant to 8 U.S.C. § 1182(a)(3)(B)(i)(VI),

8    "as a member of an undesignated terrorist organization." Exh. 1 (*Decision on Application for*

9    *Status as Permanent Resident*) at 2-4.  In doing so, the DHS relied entirely on evidence that the

10   Asylum Office had rejected as insufficient grounds for inadmissibility.

11       24.    DHS's conclusion that Mr. Khan's involvement in MQM renders him

12   inadmissable pursuant to  8 U.S.C. § 1182(a)(3)(B)(i)(I), which directly contradicts the Asylum

13   Office's determination on the same issue based on the very same set of facts, is clearly arbitrary,

14   capricious, and contrary to law.

**By Denying Mr. Khan's Application for Adjustment of Status and Providing No Means To
Appeal or Respond to the Classification of MQM as an "Undesignated Terrorist
Organization" Under 8 U.S.C. § 1182(a)(3)(vi)(III), DHS Violated the APA.**

16       25.    By denying Mr. Khan's application for adjustment of status, without providing any

17   opportunity for him to respond to their finding that he is inadmissible, a finding which hinges on

18   the classification of MQM as an undesignated "terrorist organization" under 8 U.S.C. §

19   1182(a)(3)(vi)(III), Defendants have acted arbitrarily, capriciously, and not in accordance with

20   the law.

**In the Alternative, DHS's Designation of MQM as an "Undesignated Terrorist
Organization" Under 8 U.S.C. § 1182(a)(3)(vi)(III) Is Not Supported by Substantial
Evidence in Violation of 5 U.S.C. § 706.**

23       26.    A reviewing court reviews an agency's reasoning to determine whether it is

24   "arbitrary" or "capricious," by determining whether it is supported by "substantial evidence."

25   *Dickinson v. Zurko*, 527 U.S. 150, 157-158 (1999).  An administrative action is arbitrary and

26   capricious, and therefore in violation of the Administrative Procedure Act, if the action is not

27   supported by evidence or is lacking a rational basis. *Hong Kong T.V. Video Program, Inc. v.*

28   Complaint for Relief Under the APA                    8

1 | *Ilchert*, 685 F. Supp. 712, 716-717 (N.D. Cal. 1988).  In reviewing the claim that an agency

2 | acted in an arbitrary and capricious manner, courts must ensure that the agency has examined

3 | the relevant data and articulated a satisfactory explanation for its action, including a rational

4 | connection between the facts found and the choice made.  *aaiPharma Inc. v. Thompson*, 296

5 | F.3d 227 (4th Cir. 2002), *cert. denied*, 538 U.S. 923 (2003).

6 |      27.    Substantial evidence does not support DHS's conclusion MQM, the third largest

7 | political party in Pakistan, is an "undesignated terrorist organization" under 8 U.S.C. §

8 | 1182(a)(3)(vi)(III).  In concluding that MQM is an "undesignated terrorist organization," DHS

9 | relied on two very brief statements taken out of context.  Exh.1 (*Decision on Application for*

10 | *Status as Permanent Resident*) at 3-4.  One report from the Memorial Institute for the

11 | Prevention of Terrorism says that in 2001, after Mr. Khan was in the United States and had

12 | already applied for asylum, "the MQM detonated a series of explosive devices in Karachi to

13 | protest a water shortage in the city."  *Id.* at 3.  DHS also referenced the Institute for Conflict

14 | Management website that says MQM "is now split into two factions," Muttahida Quomi Mahaz

15 | (MQM(A)) and Mohjir Quomi Movement (MQM(H)) and states that "the two factions have

16 | been responsible for several incidents of urban terrorism even as the MQM(A) participates in

17 | Pakistan's electoral process."  *Id.* at 4.  DHS then summarily concluded that MQM is engaged in

18 | "armed conflict with opponents including the government and police," yet offers no support for

19 | this proposition.  *Id.*  DHS's conclusion that MQM is an "undesignated terrorist organization"

20 | rests on a misreading of the evidence of record and is arbitrary, capricious, unsupported by

21 | substantial evidence, and contrary to law.

### Defendants Acted Arbitrarily, Capriciously and Contrary to Law Because Its Interpretation of "Undesignated Terrorist Organization" Raises Serious Constitutional Issues.

23 |      28.    Defendants' extremely broad interpretation of "undesignated terrorist

24 | organization," which in this case is deemed to include a major political party, is arbitrary,

25 | capricious and contrary to law because it violates the Due Process Clause and the First

26 | Amendment, as discussed under the Third and Fourth Causes of Action below.

27 |      29.    Generally, "courts [and agencies] can and should . . . adopt statutory

28 | Complaint for Relief Under the APA           9

1 | interpretations, when feasible, that will avoid serious constitutional issues." *United States v.*

2 | *Hernandez,* 322 F.3d 592, 602 (9th Cir. 2003) (as amended). Moreover, since the agency's

3 | interpretation raises serious constitutional issues, it is not entitled to deference. *See DeBartolo*

4 | *Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council,* 485 U.S. 568, 99 L. Ed. 2d 645,

5 | 108 S. Ct. 1392 (1988) (refusing to give deference to the NLRB's interpretation of a section of

6 | the National Labor Relations Act because the interpretation raised serious First Amendment

7 | questions); *Williams v. Babbitt,* 115 F.3d 657, 662 (9th Cir. 1997) (finding that a court may

8 | refuse to defer to an agency interpretation that raises "*serious* constitutional concerns")

9 | (emphasis in original).

### THIRD CAUSE OF ACTION
**(Denial of Mr. Khan's Application for Adjustment of Status)**
(Violation of Fifth Amendment Procedural Due Process)

10 |   30.    Plaintiff repeats, alleges, and incorporates paragraphs 1 through 29 above as

12 | though fully set forth herein.

13 |   31.    The Due Process Clause extends to aliens residing in the United States. It

14 | protects even aliens living here unlawfully:

> There are literally millions of aliens within the jurisdiction of the United States. The Fifth Amendment, as well as the Fourteenth Amendment, protects every one of these persons from deprivations of life, liberty, or property without due process of law. Even one whose presence in this country is unlawful, involuntary, or transitory is entitled to that constitutional protection.

18 | *Mathews v. Diaz,* 426 U.S. 67, 77 (1976). The Due Process test of *Mathews v. Eldridge,* 424

19 | U.S. 319 (1975), which involves a balancing of equities, applies here. What process is due

20 | involves an evaluation of "the private interest that will be affected by the official action . . .the

21 | risk of an erroneous deprivation of such interest through the procedures used, and the probable

22 | value, if any, of additional or substitute procedural safeguards; and finally, the Government's

23 | interest, including the function involved and the fiscal and administrative burdens that the

24 | additional or substitute procedural requirement would entail." *Id.* at 335.

25 |   32.    In this case, Mr. Khan, who has been granted asylee status, has a substantial

26 | individual interest in applying for and becoming a lawful permanent resident. Lawful

27 | permanent resident status confers many advantages over asylee status. Lawful permanent

28 | Complaint for Relief Under the APA                10

residents have the privilege of residing and working permanently in the United States, INA § 101(a)(20), 8 U.S.C. § 1101(a)(20), they may travel outside the United States freely and generally are readmitted to the United States automatically, INA § 101(a)(13)(C), 8 U.S.C. § 1101(a)(13)(C), and they may petition to immigrate close family members, INA §§ 201 and 203, 8 U.S.C. §§ 1151 and 1153. After five years of status as a lawful permanent resident, an individual may apply to naturalize his status to that of a U.S. citizen. INA § 316(a), 8 U.S.C. § 1427(a). Because lawful permanent resident status is a prerequisite for naturalization, any delay in adjusting to lawful permanent resident status also delays eventual naturalization.

33.    Mr. Khan requests an opportunity to inspect the record of proceeding and present information to DHS before they render a final decision on his adjustment of status of application. The additional review is an important safeguard, especially in light of the individual interests at stake.

34.    Defendants' denial of Mr. Khan's application for adjustment of status, with no opportunity to present rebuttal evidence, violates his right as an asylee to seek adjustment of status pursuant to 8 U.S.C. § 1159, without adequate justification and sufficient procedural safeguards, as guaranteed by the Due Process Clause of the Fifth Amendment to the United States Constitution.

**FOURTH CAUSE OF ACTION**
**(Denial of Mr. Khan's Application for Adjustment of Status)**
(Violation of the First Amendment to the U.S. Constitution)

35.    Plaintiff repeats, alleges, and incorporates paragraphs 1 through 34 above as though fully set forth herein.

36.    By denying Mr. Khan's adjustment of status application based on an extremely broad reading of "undesignated terrorist organization," to include a major political party, Defendants violated the First Amendment. Defendants' actions constitute a violation of freedom of speech and association. In *American-Arab Anti-Discrimination Committee v. Reno*, 70 F.3d 1045 (9th Cir. 1995), *rev'd on other grounds*, 119 S.Ct. 936 (1999), the Ninth Circuit Court of Appeals held that aliens living in the United States are entitled to First Amendment rights of expression and association. *American-Arab Anti-Discrimination Committee*, 70 F.3d

at 1063-64. The Ninth Circuit noted that "[t]he Supreme Court has consistently distinguished between aliens in the United States and those seeking to enter from outside the country, and has accorded to aliens living in the United States those protections of the Bill of Rights that are not, by the text of the Constitution, restricted to citizens." *Id.* (citing *Kwong Hai Chew v. Colding,* 344 U.S. 590, 596 n. 5 (1953)); *see also Bridges v. Wixon*, 326 U.S. 135, 148 (1945) ("Freedom of speech and of press is accorded aliens residing in this country"); *United States v. Verdugo-Urquidez,* 494 U.S. 259, 271 (1990). It can hardly be disputed, therefore, that the First Amendment extends to aliens like Mr. Khan who are not only within the territorial limits of the United States but have been affirmatively granted the right to live and work in this country as asylees for an indefinite period. 8 C.F.R. § 208.14(e)("If the applicant is granted asylum, the grant will be effective for an indefinite period, subject to termination as provided in § 208.24."); 8 C.F.R. § 274a.12(a)(5) (granting asylees the right to work in this country "without restrictions as to location or type of employment").

37.     Here, Defendants' overly-broad interpretation "undesignated terrorist organization" violates the First Amendment. By concluding that MQM, the third largest political party in Pakistan, is an "undesignated terrorist organization," Defendants have violated the First Amendment. Defendants recognize that "the MQM(A) participates in Pakistan's electoral process," yet still has deemed the organization to be an "undesignated terrorist organization," in violation of the Constitution. Exh. 1 (*Decision on Application for Status as Permanent Resident*) at 4.

## RELIEF REQUESTED

WHEREFORE, Plaintiff prays that this Court:

(1)     Accept jurisdiction over this action;

(2)     Declare DHS's decision denying Mr. Khan's application for adjustment of status to be arbitrary, capricious, unsupported by substantial evidence, and otherwise not in accordance with the law;

(3)     Declare that DHS's decision denying Mr. Khan's application for adjustment of status without an opportunity to respond to the information to be a violation of the Federal

Complaint for Relief Under the APA                    12

1    Regulations and the Due Process Clause of the Fifth Amendment;

2         (4)    Order DHS to provide Mr. Khan with an opportunity to inspect the record of

3    proceeding and rebut any adverse information before rendering a final decision on his

4    application for adjustment of status;

5         (5)    In the alternative, reverse the denial of Mr. Khan's application for adjustment of

6    status since DHS's decision is not supported by substantial evidence;

7         (6)    Grant attorney's fees and costs of court under 28 U.S.C. § 2412, 28 U.S.C. §

8    1920, Fed. R. Civ. P. 54(d), and other authority; and

9         (7)    Grant such other and further relief as this Court deems just and proper under the

10   circumstances.

11   DATED:     April 16, 2008          Respectfully Submitted,

12

13

14   Robert B. Jobe
     Katherine M. Lewis
     LAW OFFICE OF ROBERT B. JOBE
15   550 Kearny St., Ste. 200
     San Francisco, CA 94108
16   (415) 956-5513
     (415) 840-0308
17

     Attorneys for Plaintiff.
18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT

# 1

U.S. Department of Homeland Security
P.O. Box 82521
Lincoln, NE 68501-2521



**U.S. Citizenship
and Immigration
Services**

February 27, 2008

Refer To File No. LIN0319252738

A079287100

MOHAMMAD NAEEM KHAN
PO BOX 321
PETALUMA CA 94953

Dear Sir or Madam:

RE: Form: I485 APPLICATION TO ADJUST TO PERMANENT RESIDENT STATUS
    Beneficiary:    KHAN, MOHAMMAD

### Decision

This notice refers to your Form I-485, Application to Register Permanent Residence or Adjust Status, filed with this office on June 2, 2003. You are requesting adjustment of status under Section 209(b) of the Immigration and Nationality Act (INA) (Title 8, United States Code, Section 1159).

Section 209(b) of the INA states:

The Secretary of Homeland Security or the Attorney General, in the Secretary's or the Attorney General's discretion and under such regulations as the Secretary or the Attorney General may prescribe, may adjust to the status of an alien lawfully admitted for permanent residence the status of any alien granted asylum who—
  (1) applies for such adjustment,
  (2) has been physically present in the United States for at least one year after being granted asylum,
  (3) continues to be a refugee within the meaning of section 101(a)(42)(A) or a spouse or child of such a refugee,
  (4) is not firmly resettled in any foreign country, and
  (5) is admissible (except as otherwise provided under subsection (c)) as an immigrant under this Act at the time of examination for adjustment of such alien.

Matter of K-A-, 23 I & N Dec. 661, 666 (BIA 2004) (relief under section 209(b) of the INA is discretionary).

The INA section 209(c) waiver of inadmissibility is not available to aliens who are inadmissible under INA section 212(a)(3)(B) (terrorist activities).

Section 212(a)(3)(B) of the INA, as amended by the REAL ID Act of 2005, describes an alien who is inadmissible and states in pertinent part:

(i) In general. Any alien who-
  (I) has engaged in a terrorist activity,
  (II) a consular officer, the Attorney General, or the Secretary of Homeland Security knows, or has reasonable ground to believe, is engaged in or is likely to engage after entry in any terrorist activity (as defined in clause (iv));
  (III) has, under circumstances indicating an intention to cause death or serious bodily harm, incited terrorist activity;

Nebraska Service Center                                                                 www.uscis.gov

(IV) is a representative (as defined in clause (v)) of--

   (aa) a terrorist organization (as defined in clause (vi)); or

   (bb) a political, social, or other group that endorses or espouses terrorist activity;

(V) is a member of a terrorist organization described in subclause (I) or (II) of clause (vi);

(VI) is a member of a terrorist organization described in clause (vi)(III), unless the alien can demonstrate by clear and convincing evidence that the alien did not know, and should not reasonably have known, that the organization was a terrorist organization;

(VII) endorses or espouses terrorist activity or persuades others to endorse or espouse terrorist activity or support a terrorist organization;

(VIII) has received military-type training (as defined in section 2339D(c)(1) of title 18, United States Code) from or on behalf of any organization that, at the time the training was received, was a terrorist organization (as defined in clause (vi)); or

(IX) is the spouse or child of an alien who is inadmissible under this subparagraph, if the activity causing the alien to be found inadmissible occurred within the last 5 years, is inadmissible.

(iii) Terrorist activity defined.  As used in this Act, the term "terrorist activity" means any activity which is unlawful under the laws of the place where it is committed (or which, if it had been committed in the United States, would be unlawful under the laws of the United States or any State) and which involves any of the following:

(I) The highjacking or sabotage of any conveyance (including an aircraft, vessel, or vehicle).

(II) The seizing or detaining, and threatening to kill, injure, or continue to detain, another individual in order to compel a third person (including a governmental organization) to do or abstain from doing any act as an explicit or implicit condition for the release of the individual seized or detained.

(III) A violent attack upon an internationally protected person (as defined in section 1116(b)(4) of title 18, United States Code) or upon the liberty of such a person.

(IV) An assassination.

(V) The use of any-

   (a) biological agent, chemical agent, or nuclear weapon or device, or

   (b) explosive, firearm, or other weapon or dangerous device (other than for mere personal monetary gain), with intent to endanger, directly or indirectly, the safety of one or more individuals or to cause substantial damage to property.

(VI) A threat, attempt, or conspiracy to do any of the foregoing.

(iv) Engage in terrorist activity defined. As used in this chapter, the term "engage in terrorist activity" means, in an individual capacity or as a member of an organization-

(I) to commit or to incite to commit, under circumstances indicating an intention to cause death or serious bodily injury, a terrorist activity;

(II) to prepare or plan a terrorist activity;

(III) to gather information on potential targets for terrorist activity;

(IV) to solicit funds or other things of value for--

   (aa) a terrorist activity;

   (bb) a terrorist organization described in clause (vi)(I) or (vi)(II); or

   (cc) a terrorist organization described in clause (vi)(III), unless the solicitor can demonstrate by clear and convincing evidence that he did not know, and should not reasonably have known, that the organization was a terrorist organization;

(V) to solicit any individual--

   (aa) to engage in conduct otherwise described in this subsection;

   (bb) for membership in a terrorist organization described in clause (vi)(I) or (vi)(II); or

   (cc) for membership in a terrorist organization described in clause (vi)(III) unless the solicitor can demonstrate by clear and convincing evidence that he did not know, and should not reasonably have known, that the organization was a terrorist organization; or

(VI) to commit an act that the actor knows, or reasonably should know, affords material support, including a

safe house, transportation, communications, funds, transfer of funds or other material financial benefit, false documentation or identification, weapons (including chemical, biological, or radiological weapons), explosives, or training--

    (aa) for the commission of a terrorist activity;

    (bb) to any individual who the actor knows, or reasonably should know, has committed or plans to commit a terrorist activity;

    (cc) to a terrorist organization described in subclause (I) or (II) of clause (vi) or to any member of such an organization; or

    (dd) to a terrorist organization described in clause (vi)(III), or to any member of such an organization, unless the actor can demonstrate by clear and convincing evidence that the actor did not know, and should not reasonably have known, that the organization was a terrorist organization.

(v) Representative defined. As used in this paragraph, the term "representative" includes an officer, official, or spokesman of an organization, and any person who directs, counsels, commands, or induces an organization or its members to engage in terrorist activity.

(vi) Terrorist organization defined. As used in clause (i)(VI) and clause (iv), the term 'terrorist organization' means an organization--

    (I) designated under section 219;

    (II) otherwise designated, upon publication in the Federal Register, by the Secretary of State in consultation with or upon the request of the Attorney General or the Secretary of Homeland Security, as a terrorist organization, after finding that the organization engages in the activities described in subclauses (I) through (VI) of clause (iv); or

    (III) that is a group of two or more individuals, whether organized or not, which engages in, or has a subgroup which engages in, the activities described in subclauses (I) through (VI) of clause (iv).

A review of the record reveals that you collected funds for the Mohajir Quomi Movement (MQM). You also encouraged others to join the MQM. You assisted in the communication of that organization by passing along information to other members about protests and other events. You also distributed political literature.

A review of the record also shows that you are a member of the MQM. You joined that organization in Pakistan in 1993. You participated in meetings and protests of that organization and supported the MQM party's candidates in elections.

Information about the formation and activities of Mohajir Quomi Movement (MQM), Mohajir Quomi Movement Haqiq (MQM-H), and Muttahida Quomi Mahaz (MQM-A) was taken from the Memorial Institute for the Prevention of Terrorism (MIPT) and The Institute for Conflict Management.

The Memorial Institute for the Prevention of Terrorism (MIPT) is a non-profit organization dedicated to preventing terrorism on U.S. soil or mitigating its effects. MIPT was established after the April 1995 bombing of the Murrah federal building in Oklahoma City, and it is funded through the Department of Homeland Security's Office of Grants and Training (G&T). According to public information on www.tkb.org, "In 2001, the MQM detonated a series of explosive devices in Karachi to protest a water shortage in the city."

The Institute for Conflict Management is a non-Profit Society set up in 1997 in New Delhi, and is committed to the continuous evaluation and resolution of problems of internal security in South Asia. The Institute was set up on the initiative of, and is presently headed by, it's President, Mr. K. P. S. Gill IPS (Retd). The core areas of research on which the Institute focuses include: Continuous appraisal of internal security and the state's responses in all areas of existing or emerging conflict in South Asia; Planning for Development and Security in India's Northeast; Administrative Reforms for Restoration of Effective Civil Governance in Terrorism Affected Areas; Emerging Internal Security Challenges in South Asia; Judicial, Legal and Legislative Reforms in Terrorism Affected Areas and areas of widespread civil disorders; Evolution and Dynamics of the Underground

Receipt Number: LIN0319252756                    Page 4

Terrorist Economy and its Disruption; Identification and Evaluation of the Impact of Emerging Technologies for Terrorism and Counter terrorism; Emergency Response Codes and Protocols in Terrorism Affected Areas, Security Parameters and Procedures for Installations and Establishments Under Threat of Terrorist Attack, the 'Peace Dividend' and the Reconstruction of Societies affected by widespread collective violence, Impact of Terrorism on Child Victims, etc. The Institute is a registered non-profit, non-governmental organization supported by voluntary contributions and project aid. The Institute has provided consultancy services on terrorism & internal security to a number of governments within India and abroad. According to public information on www.satp.org, "Originally formed as the Mohajir Quomi Movement (MQM), it is now split into two factions. The faction led by the founder Altaf Hussain was renamed Muttahida Quomi Mahaz and is commonly referred to as MQM (A). A breakaway faction, created in 1992, retains the original name Mohajir Quomi Movement - with the suffix Haqiqi which means real - and is commonly referred to as MQM (H). The two factions have been responsible for several incidents of urban terrorism even as the MQM (A) participates in Pakistan's electoral process."

According to information found in the aforementioned sources, the actions and activities of MQM, MQH-H and MQM-A meet the current definition of an undesignated terrorist organization at INA section 212(a)(3)(B)(vi)(III). MQM, MQH-H and MQM-A engage in armed conflict with opponents including the government and police, detonation of explosive devices and random attacks against civilians. The violent activities of the MQM, MQH-H and MQM-A were not engaged in purely for monetary gain and match those described in section 212(a)(3)(B)(iii) and 212(a)(3)(B)(iv).

Your activities on behalf of MQM as described above make you inadmissible under Section 212(a)(3)(B)(i)(I) for engaging in terrorist activites.

Furthermore, you are inadmissible under Section 212(a)(3)(B)(i)(VI) as a member of an undesignated terrorist organization.

Accordingly, your application must be and hereby is denied. The regulations do not provide for an appeal to this decision.

Sincerely,

F. Gerard Heinauer
Director
NSC/DWC EX157